In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-22-00322-CV**

**USA TODAY A/K/A GANNETT CO., INC., GANNETT PUBLISHING SERVICES, LLC, AND GANNETT SATELLITE INFORMATION NETWORK, LLC, Appellants**

**V.**

**RYAN, LLC, Appellee**

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 22-06-07554-CV**

## MEMORANDUM OPINION

This interlocutory appeal pertains to a special appearance wherein the Defendants, Appellants USA Today a/k/a Gannett Co., Inc., Gannett Publishing Services, LLC, and Gannett Satellite Information Network, LLC (hereinafter collectively "Defendants" or "Appellants"), alleged that the trial court lacked personal jurisdiction over the breach of contract claim filed by Plaintiff, Appellee Ryan, LLC ("Ryan"), against them. Ryan filed a petition in Montgomery County,

1

Texas, district court, asserting claims for breach of contract and defamation against the Defendants. The Defendants filed a special appearance challenging both general and specific personal jurisdiction as to the contract claim, and they did not challenge personal jurisdiction on the defamation claim. After a hearing on the special appearance, the trial court denied the special appearance without issuing findings of fact or conclusions of law. The Defendants timely filed an interlocutory appeal. Because we conclude that trial court lacks personal jurisdiction over Appellants as to Ryan's breach of contract claim, we reverse the trial court's order denying Appellants' special appearance.[1]

Background

The Parties

According to the record, Ryan, LLC is a tax services provider. Ryan characterizes itself as a "Texas-based" Delaware limited liability company with its principal place of business in Dallas, Texas. In November 2019, Ryan merged with

---

[1] Defendants also objected to venue and filed a motion to transfer venue which the trial court denied. After Defendants filed this interlocutory appeal and another interlocutory appeal on the denial of their TCPA motion, the Defendants also filed a petition for mandamus in this Court. We issued a mandamus opinion holding that the trial court erred in denying the motion to transfer venue and finding that venue for the underlying lawsuit should be transferred to Dallas County. *See In re USA Today a/k/a Gannett Co., Inc.*, No. 09-23-00140-CV, 2023 Tex. App. LEXIS 7963 (Tex. App.—Beaumont Oct. 19, 2023, orig. proceeding) (mem. op.). Under the due order of pleadings, we retain jurisdiction over this appeal. *See* Tex. R. Civ. P. 120a(2).

2

S.A.L.T. Payroll Consultants, Inc. ("SALT"), and Ryan is SALT's successor-in-interest. USA Today a/k/a Gannett Co., Inc., Gannett Publishing Services, LLC, and Gannett Satellite Information Network, LLC are companies engaged in the news media business. The Gannett entities are organized in Delaware and have their principal place of business in McLean, Virginia.

Ryan's Original Petition

In June 2022, Ryan filed its Original Petition against Defendants in Montgomery County. The petition asserted several claims including but not limited to a breach of contract claim and a claim for defamation.[2] Ryan's defamation claim was based on its allegation that Defendants had published articles, podcasts, tweets, and other false communications about Ryan across the United States and globally. Ryan further alleged that the publications at issue "contain[] demonstrably false assertions of fact or create[] a defamatory impression by misrepresenting material facts, omitting material facts, and juxtaposing facts in a misleading way." Ryan's

_____

[2] One category of claims asserted in Ryan's petition against Defendants was for defamation or slander relating to a series of articles, statements, and podcasts by USA Today that discussed tax consulting work performed by Ryan on behalf of others. The second category of claims asserted by Ryan included claims for breach of contract, a suit on a sworn account, quantum meruit, unjust enrichment, and fraud all relating to the alleged tax consulting work that Ryan provided to Defendants. The parties grouped the second category of claims pertaining to the tax consulting work Ryan provided to USA Today together and referenced such claims as "contract claims"—as do we—noting these claims appear to relate to the parties' alleged agreement in which Ryan provided tax consulting work to Defendants.

3

contract claims were based on allegations that Defendants breached the parties' contract by failing to pay fees[3] relating to tax refund opportunities Ryan identified for Defendants in Kentucky and Indiana, totaling about $192,000.

Ryan attached to the petition a copy of the contract between SALT and Gannett Co., Inc., executed in July 2019. That contract stated that New York law governed, and it gave addresses for SALT in St. Petersburg, Florida and for Gannett Co., Inc. in McLean, Virginia. Neither the "Scope of Services" section—nor any other provision—of the contract defined the geographic areas for which SALT was to perform tax review services and it did not define where the work was to be done. Ryan also attached a December 2021 demand letter and invoices from SALT to Gannett Co., Inc. for unpaid professional fees owed to SALT for tax savings it identified for Gannett in Kentucky and Indiana. In addition, Ryan attached copies of news stories allegedly published by Defendants that Ryan alleged depict Ryan in a false or unfavorable light, along with copies of letters dated November 2021 and January 2022, from Ryan's counsel to Defendants' executives, outlining the news stories Ryan considered false and defamatory.

Special Appearance

---

[3] Under the parties' tax consulting agreement, Defendants agreed to pay a fee of 35% of any tax refund or savings Defendants realized because of opportunities Ryan identified.

4

Defendants filed an Original Answer Subject to Special Appearance and Motion to Transfer Venue in July 2022. Therein, Defendants asserted a general denial and asserted that the alleged statements at issue were true, were privileged under the First Amendment and under Article I, section 8 of the Texas Constitution, or were privileged under common law. At the same time, the Defendants filed their answer, Defendants also filed a Special Appearance. In the Special Appearance the Defendants argue that Ryan's petition

> . . . improperly attempts to join two unrelated sets of claims against Defendants: (1) breach of contract and related claims based on an agreement that allegedly covered tax consulting work performed by Ryan for Gannett Co. in Kentucky and Indiana ("Contract Claims"), and (2) defamation claims based on news reports published in *USA Today* and other media about Ryan's work on behalf of other clients in Arizona and North Dakota ("Defamation Claims").[] Ryan cannot maintain both sets of claims *in Texas* because Defendants are not subject to personal jurisdiction in this state as to the Contract Claims. Thus, the Court should dismiss the Contract Claims for lack of personal jurisdiction.[]
> To be clear, Defendants do not challenge personal jurisdiction as to the Defamation Claims. . . .

Defendants alleged that specific jurisdiction must be analyzed on a claim-by-claim basis and that

> [a]ll of Ryan's specific jurisdictional allegations relate only to its Defamation Claims [and] Ryan's Contract Claims are based entirely on out-of-state activities—a contract between a Florida company and a Virginia company allegedly performed in Kentucky and Indiana, and governed by New York law. The *only* Texas connection is the fortuity that, after the agreement was signed, Ryan merged with the Florida company.

5

In the Special Appearance, the Defendants argue they are not subject to general jurisdiction because they are not incorporated in Texas, and they do not maintain their principal places of business in Texas. Defendants also argue that the fact that they are registered to conduct business in Texas does not render them sufficiently "at home" in Texas to establish general jurisdiction.

As to specific jurisdiction, Defendants argue that, even if accepted as true, "*none* of Ryan's jurisdictional allegations identify any forum contacts by Defendants that give rise to, or are related to, Ryan's Contract Claims[.]" According to Defendants, Ryan's contract claims are based on Defendants' failure to pay for services that its predecessor SALT provided to Defendants in Kentucky and Indiana and the defamation claims are based on news reports published in USA Today and other media Defendants own. In addition, Defendants assert that Gannett Publishing Services and Gannett Satellite are not parties to the SALT Contract and that Ryan has not alleged any basis for asserting its contract claims against these two entities. Defendants also argue that the fact that SALT was eventually purchased by Ryan— a Texas LLC—cannot be a basis for specific jurisdiction over Defendants because the minimum-contacts inquiry focuses on the defendants' contacts with the forum state and not the plaintiff's contacts.[4] Defendants later filed an Affidavit of Brian

---

[4] The record includes a letter dated August 10, 2022, confirming the parties' Rule 11 Agreement that included an agreement "not to conduct any jurisdictional

Krueger in Support of Defendants' Special Appearance.[5] The affidavit states that Krueger was Director of Payroll for Gannett. According to the Defendants, the parties' contract does not mention Texas, it was not negotiated in Texas, Defendants filled out a form provided by SALT to pursue a Texas refund and returned the completed form to SALT, no personnel from SALT or Ryan had to be in Texas to pursue the refund, and Defendants paid SALT's invoice in full for the Texas refund opportunity. The Defendants argue that the alleged breach of contract claim concerns only out of State activity and tax savings from other states.

Ryan's First Amended Petition

In August 2022, Ryan filed its First Amended Petition. Therein, Ryan restated its claims against Defendants for defamation and breach of contract. Ryan's defamation claim was based on its allegation that Defendants had published articles that "falsely accused Ryan [] of unlawful and unethical business practices in its

---

discovery in connection with the Original Petition and Special Appearance of Defendants[.]"

[5] In its response to Defendants' Special Appearance, Ryan argues that the Krueger Affidavit was filed "to cure Defendants['] defective Special Appearance that was not sworn or verified in accordance with Rule 120a." Ryan does not continue that argument on appeal. We note that the Texas Supreme Court has held that a defective special appearance can be cured by amendment and that an unsworn special appearance does not constitute a general appearance provided it does not acknowledge the trial court's jurisdiction nor does it seek court action other than a dismissal for lack of jurisdiction. *See Dawson-Austin v. Austin*, 968 S.W.2d 319, 322-23 (Tex. 1998).

efforts to secure legitimate tax savings for its clients."[6] Ryan's contract claims were based on its allegation that Defendants had contracted with Ryan to obtain tax savings but, after Ryan's work resulted in more than $2 million in tax savings to Defendants, Defendants failed to pay fees it owed to Ryan for the tax savings. According to Ryan's First Amended Petition, Defendants falsely claimed to Ryan that Defendants did not wish to pursue certain tax savings opportunities that Ryan had identified, but then the Defendants pursued the tax savings and failed to pay fees owed to Ryan. Ryan alleged that Defendants breached their contract with Ryan and "wrongfully pocketed Ryan's fees," and then also published articles that "falsely condemned the very tax recovery services that *USA Today* itself sought and participated in" and hid this detail from their readers. The fees Ryan alleged that Defendants failed to pay related to tax savings in Kentucky and Indiana. Ryan's defamation allegations pertain to work it performed for Defendants related to a dyed diesel refund request in Arizona and an oil well production equipment refund request in North Dakota. Ryan alleged that Defendants published false accusations "to a global internet audience" as well as in print and that the stories were republished by other media outlets.

---

[6] Ryan's defamation claims are the subject of a separate interlocutory appeal (No. 09-22-00432-CV) pertaining to the denial of a TCPA motion and that is currently pending before this Court. We include only a limited discussion about the defamation claims herein.

8

Ryan's Amended Petition alleged that Ryan is organized in Delaware and has its principal place of business in Dallas, Texas. The Amended Petition also included the following statement alleging personal jurisdiction over the Defendants:

> . . . This Court has personal jurisdiction over Defendants under Texas' long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042, and consistent with the Due Process Clause of the Fourteenth Amendment because Defendants transacted business in Texas, because Defendants (i) contracted with a Texas resident and the contract was performed, in whole or in part, in Texas, (ii) committed torts in the state of Texas; and (iii) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. In addition, Defendants have sufficient minimum contacts with Texas, including because:
>
> a) The contract at issue identifies Texas as a state where Ryan's predecessor in interest, SALT, would seek tax savings on Defendants' behalf;
>
> b) The sales person that secured the engagement with Gannett for SALT was a Texas resident working from Texas at the time he solicited the business and Gannett hired SALT;
>
> c) The tax savings that Gannett hired SALT and then Ryan to obtain for it included merger acquisition work. The merger acquisition work involved capturing tax savings for Gannett following its acquisition of Texas businesses, mostly small local papers, that were then rolled into Gannett by identifying taxes paid by Gannett's predecessor and using those taxes to reduce Gannett's tax liability to the State of Texas;
>
> d) SALT identified to Gannett substantial tax savings available to it from the State of Texas;
>
> e) Gannett authorized SALT to seek those tax savings from the State of Texas by executing forms to submit to the State of Texas Workforce Commission which specifically: (i) authorized SALT and Ryan to act on Gannett's behalf with the State of Texas; and (ii) requested a refund of all credits in Gannett's unemployment tax account;

9

f) The contract at issue was performed, in part, in the State of Texas in connection with SALT's and Ryan'[s] attempts to obtain tax savings for Gannett on its unemployment taxes incurred due to Gannett's Texas based employees;

g) Substantially all of the work performed under the contract at issue was done after SALT was acquired by Ryan, a Texas company;

h) Gannett obtained substantial tax savings from the State of Texas as a result of Ryan's work and knowingly accepted tax savings from the State of Texas;

i) An invoice for work performed on Texas unemployment tax savings for Gannett under the contract at issue was generated in Texas;[]

j) Shortly after the merger, SALT made Defendants aware that Ryan, which it knew was a Texas-based company, acquired SALT and SALT employees specifically identified Ryan as their new employer in written communications to Defendants following the merger;

k) Defendants committed the tort of defamation in Texas by targeting Ryan (a Texas company) and publishing defamatory statements about Ryan to a substantial number of Texas residents, including in a substantial number of print editions that were published in Texas, and in online editions, podcasts, and tweets that were published to Texas residents;

l) Defendants transact business in the state of Texas as they market and sell their cornerstone newspaper, *USA Today*, which has over one million daily subscribers, to a substantial number of Texas residents;

m) Defendants' *USA Today* newspaper has a substantial number of subscribers who are residents of Texas;

n) Defendants distribute a substantial number of print editions of *USA Today* to hotels and other locations in Texas, where they are read by Texas residents;

o) Defendants own and operate printing and distribution facilities and operations in Texas;

10

p) Defendants' printing and distribution facilities in Texas print and distribute copies of *USA Today* to their subscribers who reside in Texas and to hotels and other locations in Texas;

q) Defendants printed copies of the *USA Today* articles at issue in this case at their Texas print facilities and distributed those articles to their subscribers who reside in Texas and to hotels and other locations in Texas;

r) At the time Ryan worked for Defendants under the contracts at issue, Defendants had offices and employed over 400 people in the state of Texas, including, on information and belief, people involved in the publication of the defamatory print editions at issue;

s) Defendants solicit people in Texas to work for them in Texas;

t) Until at least 2015, Defendants owned and operated an advertising office in Texas, for their flagship paper, *USA Today*;

u) In the State of Texas, Defendants currently own and operate nine daily publications (including, but not limited to, new[s]paper brands The Abeline Reporter-News, Corpus Christi Caller-Times, The El Paso Times, GoSanAngelo | Standard-Times, Times Record News (Wichita Falls), Amarillo Globe-News, Austin American-Statesman,[] and Lubbock Avalanche-Journal), eighteen weekly publications, and three production facilities;

v) Gannett owns real and/or business personal property and has offices and/or production facilities throughout the State of Texas;[]

w) Defendant Gannett Satellite is registered to do business in Texas and has been since 1982;

x) Defendant Gannett Co. is registered to do business in Texas and has been since 2016; and

y) Defendants' employee, Craig Harris, submitted a FOIA request in Texas concerning Ryan's business activities in the State of Texas.

11

Ryan also alleged that three members of Ryan resided in Montgomery County, Texas, at the time the causes of action against Defendants accrued.

Ryan's Response to the Special Appearance

In September 2022, Ryan filed its Response in Opposition to Defendants' Special Appearance. Therein, Ryan argued that Defendants are subject to personal jurisdiction in Texas on the contract claims because: the contract was solicited from Texas; the contract was performed in part by both Defendants and Ryan in Texas; the parties' relationship began when a SALT sales representative in Texas called Defendants; Defendants hired SALT specifically to seek tax refunds in Texas; Defendants actually received a tax refund from the State of Texas; and Ryan continued to pursue tax refunds at Defendants' request after SALT merged with Ryan, a Texas-based company. Ryan also argued that Defendants are subject to general jurisdiction in Texas because they are "essentially 'at home' in Texas" because: Defendants are registered to do business in Texas, their newspapers are widely circulated in Texas, Defendants employ hundreds of Texas residents, Defendants own real property in Texas, Defendants own multiple Texas community newspapers, and Defendants have "extensive business operations, facilities and offices in Texas."

As to Ryan's contract claim, Ryan alleged that Defendants have "had contacts with the State of Texas specifically in connection with the [contract] at issue in

Ryan's Contract Claims." According to Ryan, the SALT sales representative who initially contacted Defendants worked and lived in Texas at the time. Defendants hired SALT to perform tax savings work in connection with Defendants acquisition of Texas businesses (local newspapers), and SALT identified tax overpayments in Texas that could be refunded. In addition, Ryan argues that Defendants' Special Appearance was filed before Ryan filed its First Amended Petition, and that "every jurisdictional fact contained in the First Amended Petition that is not explicitly denied in Krueger's affidavit or the Special Appearance the Affidavit verifies is conceded." Therefore, Defendants failed to meet their burden to negate every ground Ryan asserted as a basis for personal jurisdiction.

Ryan argues that, as a result, only three of the twenty-five jurisdictional allegations in its First Amended Petition (see (a) through (y) *supra*) are deemed conceded. According to Ryan, Defendants have purposefully availed themselves of the privilege of conducting business in Texas through their contract with SALT and the work performed under the contract, and the tax savings opportunities in Texas identified through the contract constitute purposeful availment because they are a benefit, advantage, or profit Defendants sought from the forum state. Ryan also argues that its contract claims "arise out of or relates to the defendant[s'] contacts with the forum." Ryan explains that Defendants approached Ryan about seeking tax savings in Indiana after Ryan merged with SALT, and that by accepting performance

13

of Ryan—a Texas limited liability company—under the parties' contract, the Texas long-arm statute is satisfied. Ryan also argues that Defendants are subject to general jurisdiction in Texas by virtue of their extensive business operations, facilities, offices, and employees in Texas. Finally, Ryan argues that exercising jurisdiction over Defendants would not offend notions of fair play and substantial justice because Defendants are a nationwide corporation that is engaged in litigation across the country and because Texas has an interest in adjudicating a contract dispute involving a company headquartered in Texas. Ryan also argues that trying its claims against Defendants in one action would be convenient and efficient.

Attached to its Response was the affidavit of Kevin Cappock, a Principal for Ryan, in which Cappock attested, in relevant part, that the SALT sales representative who solicited Defendants' business worked and lived in Texas and that the parties' contract was performed in part in Texas. Also attached was an invoice from SALT to Defendants for fees due for having identified an overfunding of Defendants' Texas unemployment tax account and for a reduction in Indiana unemployment taxes. In addition, Ryan attached the Declaration of Richard Frissell, in which he stated that he previously worked for SALT as a Senior Manager and for Ryan as a Director of Employment Tax. Frissell also stated that he informed Defendants when Ryan acquired and merged with SALT and that Ryan was a Texas-based company.

14

Ryan also filed under seal a copy of a confidential report dated August 16, 2019, that SALT issued to Gannett Co., Inc. which identified tax savings opportunities for Defendants. The report identified tax savings in Texas, Kentucky, and Indiana, as well as several other states.

Reply in Support of Special Appearance

In their Reply in Support of Special Appearance, Defendants argued that they are not subject to general jurisdiction in Texas because they are incorporated in Delaware and maintain their principal places of business in Virginia, so that they are not "at home" in Texas. Defendants also argues that they are not subject to specific jurisdiction in Texas because the contract claims do not have a substantial connection to Defendants' alleged activities in Texas. According to Defendants,

> Ryan's claims are based on a contract between Gannett, based in Virginia, and a Florida-based payroll-tax consulting company. The contract was negotiated and executed outside Texas prior to Ryan's purchase of the Florida company. The parties selected New York law to govern their agreement. "Texas" appears nowhere in the [contract] document. The Contract Claims arise solely from disputed non-payments for alleged contract performance in Kentucky and Indiana.

Defendants argue that the alleged solicitation of them by a SALT sales representative in Texas is not purposeful availment by Defendants. Defendants further argue that Texas was not the focus of the parties' contract, and tax savings in Texas comprised only about 5% of the total proposed savings that were identified. Ryan's merger with SALT cannot be a basis for personal jurisdiction over Defendants because the

merger was unilateral activity by the plaintiff (Ryan) and a third party (SALT). Defendants argue that any direct contract they had with Ryan is not sufficient to establish purposeful availment because "[i]t is well established that 'merely contracting with a Texas company does not necessarily constitute "purposeful availment" for jurisdictional purposes.'"[7] In this case, Defendants assert that the lawsuit does not arise from nor relate to their contacts with Texas and so there is no substantial connection between Defendants' Texas contacts and Ryan's contract claims that would be needed for specific jurisdiction. According to Defendants,

> [a] trial of the Contract Claims in this case would not focus on SALT's alleged actions in Texas or Ryan's collection of a fee for Texas-related work. Rather, the operative facts of the Contract Claims concern whether Ryan was entitled to payments from Gannett for tax refund opportunities located in Kentucky and Indiana.

In its Reply, Defendants also surmise that Ryan decided to file its contract claims in the same lawsuit as its defamation claims as "part of its retaliation against [Defendants]."

Hearing on Special Appearance

The trial court heard the Special Appearance on September 16, 2022. Counsel for Ryan asked the court to focus on specific, rather than general, jurisdiction.

---

[7] *See Majors Mgmt., LLC v. Price & Co.*, No. 09-17-00063-CV, 2018 Tex. App. LEXIS 1103, at **16-18 (Tex. App.—Beaumont Feb. 8, 2018, no pet.) (mem. op.); *Rushmore Inv. Advisors, Inc. v. Frey*, 231 S.W.3d 524, 530 (Tex. App.—Dallas 2007, no pet.)

16

Counsel for the Defendants argued that Defendants did not contest jurisdiction as to the defamation claims, but the Defendants emphasized that the jurisdictional analysis for the contract claims was "entirely separate" from the defamation claim. In particular, the Defendants argued that "the gist of [] [Ryan's] breach of contract claim [] ha[d] nothing to do with Texas[]" so that Ryan cannot satisfy the "relatedness" requirement for specific jurisdiction—that there is no substantial connection between the Defendants' contacts with Texas and the operative facts of the litigation. The Defendants argued that the "effects test" for specific jurisdiction requires that a defendant's alleged wrongful conduct must connect the *defendant* to the forum state and not just to a plaintiff that resides in the forum state.[8] The Defendants argued that the defamation claims have nothing to do with the contract at issue, and the challenge to personal jurisdiction pertains only to the breach of contract claims.

Counsel for Ryan explained to the court that perhaps the reason Defendants were contesting personal jurisdiction over the contract claims was because Defendants had not disclosed in the news articles on which Ryan based its defamation claims that Defendants were a client for Ryan, and it would be embarrassing for that detail to come out. Ryan also argued that Texas was a subject

---

[8] *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 564 (Tex. 2018).

17

of the parties' contract because Defendants "had been on somewhat of a buying spree and had bought up a lot of local Texas newspapers[]" and that tax savings in Texas comprised about a third of the opportunities that Ryan identified. Ryan further argued that Defendants

> . . . actually petitioned the state of Texas for a tax refund. They signed paperwork created by the Texas Workforce Commission to get a tax refund in this state under the agreement that forms the basis of our breach of contract claim. They got a check from the state of Texas, not just someone in Texas, the state of Texas for that tax refund, and they cashed it. That is purposeful availment.

Ryan argued that the "relatedness" requirement for specific jurisdiction was satisfied and no strict causal link between the Texas work and the breach of contract claim was required. According to Ryan, the breach of contract claim arises out of the same agreement between the parties that resulted in tax savings for Defendants in Texas. Ryan also argued that the tax savings in Indiana were identified after SALT merged with Ryan, that Ryan strongly urged Defendants to pursue it, Ryan actually paid Defendants' Indiana taxes on Defendants' behalf, but Defendants refused to pay for the tax savings achieved.

Order Denying Defendants' Special Appearance

On September 20, 2022, after the hearing, the trial court signed an Order Denying Defendants' Special Appearance. The order did not include findings of fact and conclusions of law, and our record does not reflect that any party requested them. Defendants timely filed their notice of an interlocutory appeal.

18

## Issue

Appellants argue that the trial court erred by denying Defendants' Special Appearance. According to Appellants, they are not subject to general jurisdiction in Texas because they are not "at home" in the State. Appellants also argues that they are not subject to specific jurisdiction as to Appellee's contract claims because those claims are not substantially connected to Appellants' Texas contacts.

## Standard of Review

A nonresident defendant may challenge a Texas court's personal jurisdiction over it by filing a special appearance. Tex. R. Civ. P. 120a. Whether a trial court has personal jurisdiction over a nonresident defendant is ultimately a question of law that we review de novo. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *LG Chem Am., Inc.*, 670 S.W.3d at 346; *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Booth v. Kontomitras*, 485 S.W.3d 461, 476 (Tex. App.—Beaumont 2016, no pet.). If the plaintiff meets this initial burden, the defendant then bears the burden to negate all bases of personal

19

jurisdiction alleged by the plaintiff. *See LG Chem Am., Inc.*, 670 S.W.3d at 346 (citing *Kelly*, 301 S.W.3d at 658). The defendant may negate the jurisdictional allegations on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659.

Where, as here, there are no timely filed findings of fact and conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. However, in this case, Appellants do not dispute Appellee's jurisdictional facts or allegations. So, we need not consider any implied findings of fact, and we consider only the legal question whether the undisputed facts establish Texas jurisdiction. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150 n.4). When reviewing Appellee's jurisdictional allegations, we ask only whether the allegations are sufficient to invoke the exercise of personal jurisdiction over Appellants without regard to the merits of their claims. *See Booth*, 485 S.W.3d at 477.

Personal Jurisdiction Generally

"A court must have personal jurisdiction over a defendant to issue a binding judgment." *LG Chem Am., Inc.*, 670 S.W.3d at 346 (citing *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7-8 (Tex. 2021)). Texas courts may exercise personal jurisdiction over a nonresident defendant as authorized by the

20

Texas long-arm statute and when consistent with federal due-process guarantees. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (the Texas long-arm statute); *LG Chem Am., Inc.*, 670 S.W.3d at 346; *Luciano*, 625 S.W.3d at 8. The Texas long-arm statute provides that a nonresident does business in the state if the nonresident commits certain acts in Texas, including, but not limited to, the following:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
> (2) commits a tort in whole or in part in this state; or
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042. An allegation of jurisdiction may satisfy the Texas long-arm statute, but the allegation may not satisfy the United States Constitution. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149. Therefore, even if a court determines the facts satisfy the Texas long-arm statute, the court must also examine the facts to determine whether the exercise of personal jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

General Jurisdiction

A defendant's contacts may support either general personal jurisdiction or specific personal jurisdiction. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). General jurisdiction arises when a defendant's contacts with the forum state are so

"continuous and systematic" that the defendant is "essentially at home[]" in the forum state. *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (citations omitted). This kind of personal jurisdiction allows courts to render a binding judgment against a defendant even if the plaintiff's claims neither arise from activities conducted in the forum state nor "'relate to the forum [s]tate or the defendant's activity there.'" *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)).

General jurisdiction may only be exercised over a nonresident defendant whose contacts in the forum state are so continuous and systematic "'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction requires a more demanding minimum contacts analysis than specific jurisdiction does, and the nonresident defendant must have conducted substantial activities within the forum. *BMC Software*, 83 S.W.3d at 797. For a Texas court to exercise general jurisdiction over a nonresident, the nonresident's contacts with Texas must be continuous, systematic, and substantial. *See Goodyear*, 564 U.S. at 916, 919; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) ("If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts."). "General jurisdiction is

22

premised on the notion of consent. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002). The plaintiff must establish more than isolated or sporadic visits with the forum before such contacts will constitute the type of continuous, systematic, and substantial contacts necessary for general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-19 (1984).

The Supreme Court has explained,

> . . . only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. "For an individual the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." With respect to a corporation, the place of incorporation and principal place of business are "paradig[m]. . .bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.
> . . .
> . . . Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

*Daimler AG*, 571 U.S. at 137-39 (quoting *Goodyear*, 564 U.S. at 919, 924).

23

Ryan alleged that Defendants had "significant contacts with the State of Texas for an extended period of time[]" sufficient to support general jurisdiction. Specifically, Ryan alleged that:

- Defendants Gannett Satellite and Gannett Co. are registered to do business in Texas;
- Gannett markets and sells its cornerstone newspaper (*USA Today*) in Texas;
- Gannett's business is supported by a large number of employees, property and facilities in Texas;
- Gannett owns and operates printing and distribution facilities and operations in Texas; and
- Gannett owns and operates nine daily and eighteen weekly publications in Texas.

Defendants did not deny these jurisdictional allegations; however, while these kinds of contacts with the state of Texas may be "continuous and systematic," *see, e.g.*, *Am. Type Culture Collection*, 83 S.W.3d at 810, courts do not generally find them sufficient to show that the entity is "essentially at home" in the state nor will such be sufficient to support general jurisdiction. *See, e.g.*, *Daimler AG*, 571 U.S. at 127; *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 565. The parties do not dispute that Appellants are organized under the laws of Delaware and have their principal places of business in Virginia, and these facts are generally regarded as the hallmark of general jurisdiction. *See Daimler AG*, 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919); *see also Ford Motor Co.*, 141 S. Ct. at 1024; *Ford Motor Co. v. Cejas*, No. 09-16-00280-CV, 2018 Tex. App. LEXIS 1389, at **26-27 (Tex. App.—Beaumont

24

Feb. 22, 2018, no pet.) (mem. op.). Therefore, based on the record before us, we cannot say that the Appellants' "'affiliations with the State are so 'continuous and systematic' as to render [them] essentially at home in the forum State.'" *See Daimler AG*, 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919). We conclude that there is no general jurisdiction over the Appellants. *See id.*

Consent to Personal Jurisdiction for the Defamation Claims

Before we examine specific jurisdiction, we note that Appellants did not challenge personal jurisdiction as to Ryan's defamation claims. That said, a defendant may challenge personal jurisdiction by filing a special appearance, and "[a] special appearance may be made as to an entire proceeding or as to any severable claim involved therein." *See* Tex. R. Civ. P. 120a.

> Severance is proper when (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of an independently asserted lawsuit, and (3) the severed claim is not so interwoven with the remaining action that the actions involve the same facts and issues.

*State v. Morello*, 547 S.W.3d 881, 889 (Tex. 2018) (citing *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007)). Trial courts have broad discretion to sever claims. *See id.*

Courts examine specific personal jurisdiction on a "claim-by-claim" basis unless all claims arise from the same forum contacts. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (Specific jurisdiction "involves a 'claim-by-

25

claim' analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation."); *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150, 158 (stating "specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state[]" and concluding that defendants' contacts with Texas supported personal jurisdiction for trade secrets claim but not for tortious interference claim); *Kelly*, 301 S.W.3d at 660 (separately analyzing jurisdictional contacts for fraud and trust fund claims to determine specific jurisdiction); *Schrader v. Roach*, No. 01-20-00183-CV, 2022 Tex. App. LEXIS 4180, at *11 (Tex. App.—Houston [1st Dist.] June 21, 2022, pet. denied) (mem. op.) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."); *see generally Booth*, 485 S.W.3d 461 (analyzing personal jurisdiction for each claim).

Here, the controversy involves claims for defamation and claims related to the alleged breach of contract. The causes of action, while related, do not arise from the same forum contacts. The defamation or slander claims pertain to news stories Appellants published in a variety of media formats, and they largely concern events in Arizona and North Dakota. By contrast, the contract claims pertain to Appellants' alleged failure to pay on a contract with Ryan (as successor-in-interest to SALT) and to tax consulting services Ryan and SALT performed for Appellants. At the hearing on the special appearance, counsel for Appellants told the court that a jury would see

26

a report generated by Ryan and provided to Appellants that identified tax savings in multiple states, including Kentucky, Indiana, and Texas. The parties agree that Appellants paid Ryan for the tax consulting work it performed for Appellants regarding potential tax savings in Texas. We conclude that Appellants' consent to personal jurisdiction as to Ryan's defamation claims does not constitute a consent to personal jurisdiction as to Ryan's contract claims. *See* Tex. R. Civ. P. 120a; *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413.

Specific Jurisdiction

Specific personal jurisdiction applies more narrowly than general jurisdiction. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412-13 (citing *Ford Motor Co.*, 141 S. Ct. at 1024). Courts can exert specific jurisdiction over a nonresident defendant when two conditions are met: (1) the defendant engages in some act by which it purposefully avails itself of the privilege of conducting activities within the forum state, and (2) the plaintiff's claims arise out of or relate to those forum contacts. *Id.* (citing *Ford Motor Co.*, 141 S. Ct. 1024-25; *Luciano*, 625 S.W.3d at 8-9); *LG Chem Am., Inc.*, 670 S.W.3d at 346 ("Th[e] specific-jurisdiction analysis involves 'two co-equal components': purposeful availment and relatedness.") (quoting *Moki Mac River Expeditions*, 221 S.W.3d at 579). This kind of personal jurisdiction involves a "claim-by-claim" analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation. *Id.*

27

at 413 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150); *see also Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017).

Purposeful Availment

The purposeful availment analysis asks whether "'a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there.'" *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 152). "To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum market." *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). We apply three considerations to determine purposeful availment:

- "[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person";
- "The contacts relied upon must be purposeful," not "random, fortuitous, or attenuated"; and
- The defendant "must seek some benefit, advantage[,] or profit by availing itself of [Texas's] jurisdiction."

*See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413-14 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151). "Where the defendant has 'deliberately' engaged in significant activities within a state, he 'manifestly has availed himself of the privilege of conducting business there.'" *Luciano*, 625 S.W.3d at 9 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).

28

With these considerations in mind, we find the following jurisdictional allegations in Ryan's First Amended Petition satisfy the purposeful availment requirement:

> e) Gannett authorized SALT to seek [] tax savings from the State of Texas by executing forms to submit to the State of Texas Workforce Commission which specifically: (i) authorized SALT and Ryan to act on Gannett's behalf with the State of Texas; and (ii) requested a refund of all credits in Gannett's unemployment tax account;
> . . .
> h) Gannett obtained substantial tax savings from the State of Texas as a result of Ryan's work and knowingly accepted tax savings from the State of Texas;
> . . .
> l) Defendants transact business in the state of Texas as they market and sell their cornerstone newspaper, USA Today, which has over one million daily subscribers, to a substantial number of Texas residents;
> . . .
> n) Defendants distribute a substantial number of print editions of USA Today to hotels and other locations in Texas, where they are read by Texas residents;
>
> o) Defendants own and operate printing and distribution facilities and operations in Texas;
>
> p) Defendants' printing and distribution facilities in Texas print and distribute copies of *USA Today* to their subscribers who reside in Texas and to hotels and other locations in Texas;
>
> q) Defendants printed copies of the *USA Today* articles at issue in this case at their Texas print facilities and distributed those articles to their subscribers who reside in Texas and to hotels and other locations in Texas;
>
> r) At the time Ryan worked for Defendants under the contracts at issue, Defendants had offices and employed over 400 people in the state of Texas, including, on information and belief, people involved in the publication of the defamatory print editions at issue;

29

s) Defendants solicit people in Texas to work for them in Texas;

t) Until at least 2015, Defendants owned and operated an advertising office in Texas, for their flagship paper, *USA Today*;

u) In the State of Texas, Defendants currently own and operate nine daily publications (including, but not limited to, new[s]paper brands The Abeline Reporter-News, Corpus Christi Caller-Times, The El Paso Times, GoSanAngelo | Standard-Times, Times Record News (Wichita Falls), Amarillo Globe-News, Austin American-Statesman,[] and Lubbock Avalanche-Journal), eighteen weekly publications, and three production facilities;

v) Gannett owns real and/or business personal property and has offices and/or production facilities throughout the State of Texas;[]

w) Defendant Gannett Satellite is registered to do business in Texas and has been since 1982;

x) Defendant Gannett Co. is registered to do business in Texas and has been since 2016; and

y) Defendants' employee, Craig Harris, submitted a FOIA request in Texas concerning Ryan's business activities in the State of Texas.

Taken together, these activities, which Appellants do not deny, reflect an intent to conduct business and "serve the market" within Texas as well as intent to seek certain tax benefits or refunds in Texas. *See id.* at 9-10.

Relatedness

That said, our analysis does not end with purposeful availment because "the exercise of specific jurisdiction is prohibited if 'the *suit*' does not 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *See id.* at 14 (quoting *Bristol-Myers*, 582 U.S. at 262). The Texas Supreme Court has explained,

30

. . . This so-called relatedness inquiry defines the appropriate "nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579; *see also Walden* [*v. Fiore*], 571 U.S. [277,] 284 [(2014)]; *Shaffer v. Heitner*, 433 U.S. 186, 213 [] (1977).

In *Moki Mac*, we held that the relatedness requirement is satisfied by a "substantial connection" between the nonresident defendant's contacts and the "operative facts of the litigation." 221 S.W.3d at 585. After *Moki Mac*, the Supreme Court in *Bristol-Myers* explained that the "arise out of or relate to" standard suggests there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." 137 S. Ct. at 1780 (alteration in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 [] (2011)). In other words, "specific jurisdiction is confined to adjudication of issues *deriving from*, or *connected with*, the very controversy that establishes jurisdiction." *Id.* (emphasis added).

*Id.* To be sure, the relatedness requirement does not require a strict causal link between the defendant's in-state activity and the litigation. *See Ford Motor Co.*, 141 S. Ct. at 1026. But "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).

Ryan argues that the relatedness requirement is satisfied because "work under the [parties' contract] was performed at Gannett's direction in Texas, by a Texas company, and Gannett directly petitioned the Texas government itself for tax refunds." While these facts may be true, here the Texas part due under the contract was paid by the Defendants. The unpaid amount due under the contract at issue in

31

this lawsuit pertains to Appellants' alleged failure to pay for tax refunds or savings that Ryan (or SALT) identified in Kentucky and Indiana. The appellate record includes copies of invoices from SALT to Gannett for tax savings opportunities identified in Kentucky and Indiana, and the invoices show a St. Petersburg, Florida address for SALT and a Milwaukee, Wisconsin address for Gannett. Here, the parties do not dispute that Appellants' paid Ryan (or SALT) for tax savings opportunities identified in Texas, and the dispute does not arise from Appellants' pursuit of tax savings in Texas. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Bristol-Myers*, 582 U.S. at 265. We conclude there is no "substantial connection" between Appellants' activities in Texas and the operative facts of the contract claims in this lawsuit. *See Luciano*, 625 S.W.3d at 14, 15 (quoting *Bristol-Myers*, 582 U.S. at 265).

Having found no basis for either general or specific personal jurisdiction over the Appellants/Defendants, we need not examine whether due process is satisfied. *See* Tex. R. App. P. 47.1. We conclude that the trial court erred by denying Appellants' Special Appearance, and we reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

LEANNE JOHNSON
Justice

Submitted on October 23, 2023
Opinion Delivered December 14, 2023

Before Golemon, C.J., Johnson and Wright, JJ.